PERRY v. BEDFORD et al.   (No. 8087.)

(Court of Civil Appeals of Texas. Dallas. May 10, 1919.)

1. LIMITATION OF ACTIONS ⬤⟿46(1)—FOUR-YEAR STATUTE—SUIT AGAINST SURETIES OF SELLING AGENT.

Where an agent contracted to sell books for his principal, reporting by the fifth of each month, and all books which formed basis of account. on which principal's suit against sureties on agent's bond was based were disposed of by the agent before March 1, 1910, to the knowledge of the principal, his suit against the sureties, filed April 22, 1914, was barred by the four-year statute of limitations.

2. LIMITATION OF ACTIONS ⬤⟿110—STATUTE OF LIMITATIONS—TOLLING BY BANKRUPTCY OR CONDUCT.

Where an agent to sell books, who had given a bond with sureties, became insolvent and went into bankruptcy, and his sureties tried to get the principal's claim against the agent allowed and paid out of the estate, but did nothing that legally excused or misled the principal from bringing suit against them on the agent's bond at any time after the date when the cause of action matured, the proceedings in bankruptcy and the acts of the sureties did not toll the four-year statute of limitations.

Appeal from District Court, Dallas County; W. L. Thornton, Judge.

Suit by Hugh Perry against L. A. Bedford and another. From judgment for defendants, plaintiff appeals. Affirmed.

Goggans & Smedley, of Dallas, for appellant.

Bryan, Stone & Wade and W. O. Blalock, all of Ft. Worth, for appellees.

RAINEY, C. J. On July 17, 1908, Hugh Perry and J. M. Donham entered into a written contract, whereby Perry was to furnish and supply to Donham certain schoolbooks on assignment, which the said Donham as Perry's agent, was to accept and sell and account for to said Perry on or before the 5th day of every month except July and September.

On the 3d day of August, A. D. 1908, the said Donham executed a bond with L. A. Bedford land J. L. Heath to said Hugh Perry in the sum of $300, jointly and severally binding themselves, "if the said Donham shall well and truly carry out and perform the said contract with Hugh Perry, then this obligation shall become null and void; otherwise the same shall remain in full force and effect." Things moved along until May 25, 1910, when Donham, being unable to pay his debts, placed his business in the hands of one Rice, trustee, under a deed of assignment. About July 9, 1910, Donham was adjudicated a bankrupt, and was duly granted a discharge in bankruptcy in November 3, 1910, from all his provable debts, including the debt due by him to Hugh Perry, and involved in this controversy, a dividend of 3 per cent. having been paid on April 15, 1911. The bankrupt estate was closed July 17, 1913.

All parties had actual knowledge of this pendency of said bankrupt proceedings. On April 22, 1914, Donham was both actually and notoriously insolvent. All the books which form the basis of this account were disposed of by J. M. Donham prior to March 1, 1910, which was known by Hugh Perry.

On May 31, 1910, Perry wrote defendant Bedford as follows:

"I am writing you as one of the sureties on the bond of J. M. Donham of Winters to advise you that we have been informed that Mr. Donham has made a deed of trust on his stock of goods. I consider this information due you as no doubt you would like to look into the affairs of Mr. Donham to protect your interests in this matter. Mr. Donham owed me $414.19. From this amount, however, he is entitled to credit for whatever new books on hand should not be turned in as an asset of Mr. Donham's together with his other inventory, as the new books he has on hands are the property of the publishers at all times until sold. I would suggest that you' confer with the trustee and have him set aside my books subject to my order. As soon as we receive a list of them we will advise disposition of them. I inclose herewith a list of the books that I handle as a guide in selecting out the stock belonging to me."

On June 6, 1910, Bedford replied:

"Dear Sir: In reply to yours of 31st ult. will say that I am very thankful for your writing me in regard to this matter as it had entirely slipped my memory that I had signed his·bond. I will also ask another favor of you. Will you please mail me a copy of the bond? I have the J. M. Donham business under investigation. From what I can learn it is very probable that it will pull through all right. In fact, we are going to see that he pays you the amount due."

There was other correspondence between Perry and Bedford in relation to getting a settlement with Donham and having Perry's claim presented to the bankrupt court on up to July 12, 1910, when Perry wrote to Bedford as follows:

"We have credited Mr. Donham with the books turned over to Mr. Tucker. I hope the estate will pay most of Mr. Donham's indebtedness. I will, of course, expect you and Mr. Heath to keep me advised with reference to what transpires at the meetings which may be held now or later on by creditors. I will make up an affidavit to my account and send in whenever you think it necessary."

This at least shows that the books had been turned over to Perry's agent, and nothing remained between them except an indebtedness of over $300.

On April 22, 1914, Hugh Perry filed this suit against L. A. Bedford and J. L. Heath as sureties on the bond of J. M. Donham to recover the sum of $343.94 due to said Perry, for the default of said Donham, he being insolvent.

On October 21, 1910, Perry filed an amended petition, alleging, in substance, what was alleged in the original petition, with the additional allegation that, "on or about the 25th day of April, A. D. 1910, the said J. M. Donham admitted in writing his indebtedness to plaintiff as then and now claimed by plaintiff, and promised and agreed in writing to pay said indebtedness," and, further, "Plaintiff further shows to the court that on or about the 6th day of June, A. D. 1910, the defendant L. A. Bedford, acting for himself and as the agent and representative of his codefendant, J. L. Heath, admitted in writing the liability of himself and his codefendant, J. L. Heath, for said indebtedness of the said J. M. Donham to plaintiff as then and now claimed by the plaintiff, and promised and agreed in writing that the same should be paid in full, and that they would see that he paid same in full."

Defendants answered by general demurrer and general denial and specially the statute of four-year limitation to the written promises to pay said indebtedness, and that the same was barred. The plaintiff then filed his first supplemental petition, charging that the account between Perry and Donham was such a mutual and current account between them that it did not cease until within less than four years from the date on which the suit was filed, and the pending of the bankruptcy proceedings suspended the running of the statute, and that the acts of Bedford and Heath prevented the running of the statute. Also alleged:

"Plaintiff further shows that when the promises and assurances made by the defendants to this plaintiff, as hereinabove shown, and as also shown in plaintiff's first amended petition herein, were made, and at that time the defendants, and each of them, knew that the estate of J. M. Donham was at that time greatly involved, and contemplated that it would be necessary for this plaintiff to undertake to collect his claim from the estate of J. M. Donham, and that it would require and take a considerable period of time within which to make this effort and to realize whatever could be realized from said estate, and the said defendants did not contemplate, expect, promise, or intend by their said promises that the amount due to this plaintiff, by the said J. M. Donham, and which amount the defendants promised to see that he paid, would be paid immediately upon the execution of said promises, but the said defendants, and each of them, did promise and agree, and intend thereby that they and each of them would pay any deficiency due this plaintiff on his claims against J. M. Donham after plaintiff had realized and collected whatever sum or sums he could from said estate, and the course of conduct pursued in said matter by all of the parties hereto shows that this is true."

A jury was waived, and the case was tried by the court, who gave judgment in favor of defendants, from which judgment plaintiff appeals.

[1] Appellant's first assignment of error is:

"The court erred in his first conclusion of law to the effect that the plaintiff's suit upon the alleged contract and bond were barred by the four-year statute of limitation at the time it was filed."

We think this assignment is not well taken. The liability of appellees depended upon the compliance with the contract made by Donham with the appellant. Appellees were only sureties. By the terms of the said contract Donham was to make a report to Perry of the books sold and pay therefor on or before the 5th of each and every month. "All the books which formed the basis of the account upon which this suit is based were disposed of by Donham on or prior to March 1, 1910, and Hugh Perry knew that they had been so disposed of at said time." This ended the contract, and Perry had the right to then sue for the amount due. Perry and Donham's dealings related only to the consignment of schoolbooks, so when the 5th of March rolled around, or a reasonable time thereafter, and no settlement was had between them, Perry's right of action accrued, and appellees became bound on their contract for the amount due by Donham. A few days was all the time necessary for Donham to transmit the proceeds of the last sales of books from Winters to Dallas, and we conclude that the time had expired before suit was originally brought on the claim, which was more than four years, and said cause of action was barred, and said assignment is overruled.

[2] The second and third assignments of error relate to the same matter, and are presented together, and are as follows:

"(2) The court erred in his second conclusion of law to the effect that the plaintiff's suit as stated in the first amended original petition filed October 21, 1914, was barred by the four-year statute of limitations at the time it was filed.

"(3) The court erred in not rendering a judgment in favor of plaintiff herein against both defendants for the full penal sum of the bond sued on herein, together with interest thereon from the time plaintiff's cause of action thereon accrued at the rate of 6 per cent. per annum."

Appellant submits the following proposition:

"Appellant's cause of action herein being for a settlement of current accounts concerning the trade of merchandise between a merchant and his factor or agent, limitation did not begin to run until a cessation of the dealing between the merchant and his factor or agent."

Appellant sought by amendment on October 21, 1914, to recover on a new promise by the sureties, and the right to sue existed before claiming on said new promise, therefore the statute of four years had expired before said amendment was filed, but appellant seeks to limit the time for the running of limitations by the proceedings in bankruptcy and the acts of the appellees in trying to get Perry's claim allowed and paid out of the bankruptcy estate. Appellees did nothing that in any way legally excused or misled Perry from bringing suit at any time after the 1st day of March, 1910.

While there is some intimation in the correspondence between Perry and Bedford that Donham had in his hands some of the books furnished by Perry after the 1st of March, 1910, yet it failed to show any transaction or dealing after that date between Perry and Donham, and the statement of facts shows that it was agreed between the parties that all the books Donham had on hand were disposed of prior to said date, which we find was approved by the parties and the court.

We conclude that appellant's claim was barred by limitation, and the judgment is affirmed.

Affirmed.